**KALIELGOLD PLLC**

Jeffrey D. Kaliel (CA Bar No. 238293)
[admitted *pro hac vice*]
jkaliel@kalielgold.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

Sophia Goren Gold (CA Bar No. 307971)
(*pro hac vice* to be filed)
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHELLE WHEELDON, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BUFFALO WILD WINGS, INC.,<br><br>   Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff MICHELE WHEELDON, on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through her attorneys as follows:

## NATURE OF ACTION

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Buffalo Wild Wings, Inc. ("Defendant" or "BWW"), arising from its deceptive and untruthful promises to provide a flat, low-price delivery fee on food deliveries ordered through is app and website.

2. Since the beginning of the COVID-19 pandemic, BWW has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes. To appeal to consumers in a crowded food delivery marketplace, BWW has promised its customers low-price delivery in its mobile application and on its website—in Plaintiff's case, in the amount of $1.99.

3. These representations, however, are false, because that is not the true cost of having food delivered by BWW. In fact, BWW imposes hidden delivery charges on its customers in addition to the low "Delivery Fee" represented in its app and on its website.

4. On delivery orders only, BWW assesses an additional charge on food orders that it calls a "Service Fee." This additional charge amounts to $3.00 more for the same food received by non-delivery customers. Because this fee is exclusively charged to delivery customers, and not to customers who order in-store or who order online and pick up their food in store, the "Service Fee" is by definition a delivery fee. BWW obscures the true nature of the fee by naming it a "Service Fee."

5. This hidden delivery upcharge makes BWW's promise of a flat, low-cost delivery charge patently false. The true delivery costs are obscured, as described above, and far exceed its express representation that its delivery fee is $1.99.

6. By falsely marketing a quantified, low-cost delivery charge, BWW deceives consumers into making online food purchases they otherwise would not make.

7. BWW misrepresents the nature of the delivery charges assessed on the BWW mobile application and the website, by issuing in-app and online marketing materials that fail to correct

reasonable understandings of its low-cost delivery promises, and that misrepresent the actual costs of the delivery service.

8. Specifically, BWW omits and conceals material facts about the BWW delivery service, never once informing consumers in any disclosure, at any time, that the so-called "Service Fee" is assessed exclusively on delivery customers' orders and is therefore, by definition, a delivery charge.

9. Hundreds of thousands of BWW customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

10. Consumers like Plaintiff reasonably understand BWW's express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering and picking up food in person.

11. By unfairly obscuring its true delivery costs, BWW deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants such as Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike BWW, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

12. Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay BWW's delivery mark-ups.

**PARTIES**

13. Plaintiff Michelle Wheeldon is a citizen of the State of Arizona who resides in Chandler, Arizona.

14. Defendant Buffalo Wild Wings, Inc. is incorporated in Minnesota and maintains its principal business offices in Atlanta, Georgia.

**JURISDICTION AND VENUE**

15. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of Arizona, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BWW is subject to personal jurisdiction here and regularly conducts business in this district. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## COMMON FACTUAL ALLEGATIONS

**A.  Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic.**

17. In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

18. US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

19. The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

20. Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

21. According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

22. The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

23. In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

24. The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

---

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

25. The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

26. In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.     BWW's App and Website Fails to Bind Users to Any Terms of Service.**

27. When a consumer downloads the BWW app, or uses the BWW website, he may create an account in order to place an order for delivery or pickup.

28. In order to create an account, a user enters in a name and contact information.

**C.     BWW Prominently and Plainly Represents a Flat "Delivery Fee" on its App and Website.**

29. Beginning in early 2020, BWW began prominently featuring low-cost delivery promises on its mobile application and on its website.

30. Such representations often are made on the home screen of the app or website, and were always made on the check-out screen of the app and website, prior to the finalization of an order. On that screen, BWW promised a flat "Delivery Fee"—in Plaintiff's case, in the amount of $1.99.

31. Specifically, for supposed "$1.99 Delivery Fee" orders, the order finalization screen states:

   Subtotal: [representing the cost of the food selected]

---

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

        Taxes: [representing sales tax]

        Delivery Fees: $1.99

        Service Fee: $3.00

        Driver Tip:  [a prepopulated amount suggested by the app or website]

        Grand Total:  [adding up the above]

32. In short, there was no way for Plaintiff or other users of the BWW mobile application or website to *avoid* seeing BWW's promises of a flat, $1.99 delivery charge.

**D.  BWW Omits and Conceals Material Facts About the Costs of the BWW Delivery Service.**

33. But those disclosures were false and misleading, and the delivery charge was not, in fact, a flat fee of $1.99.

34. That is because BWW applies a $3.00 "Service Fee" exclusively to delivery orders and misrepresents what the "Service Fee" is actually for: a hidden delivery charge.

35. In fact, BWW does not apply this "Service Fee" to orders made on its app and website when those orders are for in-store pickup.

36. In short, the disclosed "Delivery Fee" is not actually $1.99. The *actual* "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden "Service Fee" markup applied exclusively to delivery orders.

37. BWW does not inform consumers the true costs of its delivery service and it misrepresents its "Delivery Fee" as $1.99, when in fact, those costs are actually much higher.

**E.  Other Restaurant Industry Actors Disclose Delivery Fees Fairly and Expressly.**

38. By unfairly obscuring its true delivery costs, BWW deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants like Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike BWW, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

39. For example, Del Taco does not add an additional "Service Fee" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

        Subtotal:

   Tax:

   Delivery Charge:

   Tip:

40. All line-item amounts are fairly disclosed, allowing consumers to understand the true cost of the delivery service.

41. Similarly, El Pollo Loco does not add an additional "Service Fee" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

   Subtotal:

   Delivery Charge:

   Tax:

42. All line-item amounts are fairly disclosed, allowing consumers to understand the true cost of the delivery service.

### F. Plaintiff's Experience

43. Plaintiff Michelle Wheeldon made an online purchase of food from BWW on March 26, 2021, in the total amount of $70.75.

44. Prior to placing her order, the BWW website stated that the Delivery Fee was $1.99.

45. However, Plaintiff's purchase included a hidden "Service Fee" that in fact represented an additional delivery fee. BWW charged Plaintiff a $3.00 "Service Fee" on her order.

46. Upon information and belief, this same "Service Fee" is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had she picked up her order in person from the BWW restaurant location instead.

47. Plaintiff would not have made the purchase had she known the BWW Delivery Fee was not in fact $1.99.

48. If she had known the true delivery fee, she would have chosen another method for receiving food from BWW or ordered food from another provider.

## CLASS ALLEGATIONS

49. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and Classes of similarly situated persons defined as follows:

**Arizona Class:**
All persons in Arizona who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the BWW mobile app or website, and were assessed higher delivery charges than represented.

**Nationwide Class:**
All persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the BWW mobile app or website, and were assessed higher delivery charges than represented.

50. Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

51. **Numerosity**: At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

52. **Commonality**: There are questions of law or fact common to the Classes, which include, but are not limited to the following:

   a. Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the BWW website and mobile app;

   b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

   c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

   d. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

   e. Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations;

    f.  Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

    g.  Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent low-price, flat delivery fees on food deliveries ordered through the BWW website and mobile app.

53. **Typicality**: Like Plaintiff, many other consumers ordered food for delivery from BWW's website or mobile app, believing delivery to be the flat fee represented based on Defendant's representations. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Classes emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

54. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Classes and does not have any interests adverse to those of the Classes.

55. **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiff remains interested in ordering food for delivery through BWW's website and mobile app; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

56. Specifically, Defendant should be ordered to cease from representing their delivery service as a low-cost, flat delivery fee and to disclose the true nature of their delivery fee.

57. Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

58. **The Proposed Classes Satisfy the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the

Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**FIRST CLAIM FOR RELIEF**
Consumer Fraud Act – Arizona Rev. Stat. Ann. §§ 44-1521, *et seq.*
(Asserted on Behalf of the Arizona Class)

59. Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

60. This cause of action is brought under Arizona's Consumer Fraud Act, § 44-1522, *et seq.* (the "ACFA").

61. The ACFA provides that "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." § 44-1522(A).

62. BWW's food delivery service constitutes "merchandise" as that term is defined in Section 44-1521(5).

63. Defendant committed deceptive acts and practices in violation of Section 44-1522(A) by affirmatively and knowingly misrepresenting on the BWW website and mobile app that it provides a flat, low-cost delivery fee for food orders, when, in reality, it hides delivery charges through the assessment of an elusive "Service Fee" charged exclusively to delivery customers.

64. Defendant's acts or practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

65. Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the BWW food delivery service in ordering food from Defendant's website or mobile app.

66. By falsely marketing the true costs of food delivery, BWW deceived Plaintiff and Class

members into making online food purchases they otherwise would not make.

67. Had Plaintiff known the truth of BWW's "Service Fee," *i.e.,* that BWW's "Service Fee" was in all reality a delivery fee, she would have chosen another method for receiving food from BWW or ordered food from another provider.

68. As a direct and proximate result of BWW's deceptive, unfair, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's conduct is ongoing and presents a continuing threat to Class members in that they will be deceived into ordering food for delivery under the false belief that delivery was the flat amount as advertised.

69. As a result of its deceptive, unfair, and unlawful conduct, BWW is liable to Plaintiff and the Class for damages in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Breach of Contract
**(Asserted on behalf of the Arizona Class and the Nationwide Class)**

91. Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

92. Plaintiff and BWW have contracted for food delivery services, as embodied in the representations made in the BWW app and website.

93. No contract provision authorizes BWW to be able to impose hidden delivery charges on its customers in addition to the "Delivery Fee" represented in its app and on its website.

94. BWW breached the terms of its contract with consumers by charging a "Service Fee" exclusively to orders placed for delivery that represents a hidden delivery fee.

95. Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

96. Plaintiff and members of the Classes have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## THID CLAIM FOR RELIEF
### Unjust Enrichment
**(Asserted on behalf of the Arizona Class and the Nationwide Class)**

97. Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

98. This Claim is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

99. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

100. Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

101. Plaintiff and the Class, therefore, seeks disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of herself and the Classes seek judgment in an amount to be determined at trial, as follows:

(a) For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: November 16, 2021          **KALIELGOLD PLLC**

By */s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (admitted *pro hac vice*)
Sophia Goren Gold (to be admitted *pro hac vice*)

*Attorneys for Plaintiff and the Proposed Class*